IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| JOHN M. CARTER, | ) | |
| | ) | |
| Plaintiff, | ) | 4:05CV3159 |
| | ) | |
| v. | ) | |
| | ) | |
| PAULINE SMITH, KIMBERLY | ) | MEMORANDUM AND ORDER ON |
| LORENZO, CORNHUSKER BANK, | ) | DEFENDANTS' MOTIONS TO DISMISS |
| ADAM WERTHEIMER, SAN DIEGO | ) | |
| COUNTY CHILD SUPPORT SERVICES, | ) | |
| LOUISIANA DEPARTMENT OF SOCIAL | ) | |
| SERVICES, JEFFERSON PARISH, DOES | ) | |
| 1-10, STEPHEN A. ARONIS, and TRANS- | ) | |
| UNION, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

On July 18, 2005, the plaintiff, John M. Carter, filed an amended complaint against Defendants Pauline Smith; Kimberly Lorenzo; Cornhusker Bank; Adam Wertheimer; Stephen A. Aronis; Trans-Union, LLC; San Diego County Child Support Services; Louisiana Department of Social Services; Jefferson Parish District Attorney's Office; and "Does 1-10, inclusive," alleging that the defendants' actions violated the Fair Credit Reporting Act (FCRA), 15 U.S.C. §§ 1681 et seq., and amounted to extortion, theft, trover, conversion, defamation, invasion of privacy, intentional infliction of emotional distress, and unfair business practices. (See generally Am. Compl., filing 5.) On August 10, 2005, Defendant Trans-Union, LLC, filed an answer to the amended complaint. (See filing 28.) The remaining named defendants have filed motions to dismiss the amended complaint or motions for a more definite statement of the plaintiff's claims. (See filings 41, 43, 44, 47, 61, 63, 73.) My analysis of these motions follows.

1

# I.   BACKGROUND

## A.   Parties

The amended complaint contains the following allegations concerning the identities of the parties:

1.   The plaintiff is a citizen of Lincoln, Nebraska, who alleges that he is "a victim of repeated false credit reporting and violations of the Fair Credit Reporting Act."  (Am. Compl., filing 5, ¶ 1.)

2.   Cornhusker Bank (the Bank) is "a banking institution duly incorporated and authorized to do and doing [sic] business in the State of Nebraska."  (Id. ¶ 2.)  Pauline Smith is an employee of the Bank.  (See id.)

3.   Trans-Union, LLC (Trans-Union) is a "limited liability company with its principal office located . . . [in] Chester, PA . . . [,] is authorized to do business in the State of Nebraska, and reports consumer credit information to participating subscribers."  (Id.)

4.   San Diego County Department of Child Support Services (San Diego Child Support Services) is "a municipal corporation authorized to do business in the State of California and to collect debts outside of the State of California on behalf of the County of San Diego." (Id.)  Kimberly Lorenzo and Steven A. Aronis are employed by San Diego Child Support Services, though Mr. Aronis is also alleged to be an employee of "the San Diego County District Attorney's Office."[1]  (Id.)

5.   Adam Wertheimer is an employee of "the San Diego County Superior Court."[2]  (Id.)  .

6.   Jefferson Parish District Attorney's Office is "a municipal corporation authorized to do business in the Parish of Jefferson . . . and to collect debts outside of the jurisdiction on behalf of Jefferson Parish."  (Id.)

7.   Louisiana Department of Social Services is "a State agency authorized to do business in the Parish of Jefferson . . . and to collect debts outside of the jurisdiction on behalf of the

---

[1]The San Diego County District Attorney's Office is not named as a defendant in the amended complaint.

[2]The San Diego County Superior Court is not named as a defendant in the amended complaint.

State of Louisiana."  (Id.)

The amended complaint contains no allegations concerning the identity of the unnamed defendants, "Does 1-10, inclusive."

### B.    Summary of the Plaintiff's Claims

The plaintiff alleges that after he learned that his credit report contained "inaccurate information," he "lodged disputes with the consumer reporting agencies and each of the defendants."  (Am. Compl., filing 5, ¶¶ 9-10.)  More specifically, he claims that on or about January 2002, March 2003, July 2003, February 2004, April 2004, November 2004, and January 2005, he disputed an inaccurate account that the defendants reported to Equifax Information Services, Inc., Experian Information Solutions, Inc., and Trans-Union, LLC.[3]  (Id. ¶ 11.)  These agencies then "forwarded to defendants notification of plaintiff's disputes and requested that defendants conduct a reinvestigation."  (Id. ¶ 12.)  However, the defendants "failed and refused to conduct an investigation of the disputed information" and "continued to report false, inaccurate information" about the plaintiff.  (Id. ¶ 13.)  The plaintiff alleges that the defendants' conduct was willful, negligent, reckless, malicious, and intentional, and that it caused him to suffer damages to his "personal and consumer reputation."  (Id. ¶¶ 17, 18, 23, 24, 27, 31-35.)

The plaintiff claims that the defendants' conduct violated 15 U.S.C. § 1681s-2(a)-(b) (Count I).  (See Am. Compl., filing 5, ¶¶ 16-19.)  In addition, the plaintiff alleges that the defendants "falsely and with intent to extort used and implemented a scheme involving criminal prosecution threats to accomplish collection of a debt," (Count II); "committed a theft against the Plaintiff by the unauthorized withdrawal of funds from his checking account," (Count III); "committed trover and conversion against the Plaintiff[] by the unauthorized withdrawal of funds from [his] checking account," (Count IV); defamed the plaintiff "with willful intent to injure and/or maliciously," (Count V); invaded the plaintiff's privacy "with willful intent to injure and/or maliciously," (Count VI); "intentionally inflicted humiliation and emotional distress"

---

[3]Throughout nearly all of his amended complaint, the plaintiff attributes actions to "the defendants" jointly.  In other words, the plaintiff has alleged that each and every defendant took each and every action set forth in the complaint.  As a result, some of his allegations seem contradictory.  For instance, here the plaintiff has alleged that Defendant Trans-Union, LLC reported an inaccurate account to itself.  (See Am. Compl., filing 5, ¶ 11.)

3

upon the plaintiff, (Count VII); and "engaged in unfair and deceptive trade and business practices" in violation of unspecified state laws, (Count VIII.) (Id. ¶¶ 37-54.) No additional factual allegations are offered in support of these claims.

All but one of the defendants have moved to dismiss the amended complaint. (See filings 41, 43, 44, 47, 61, 63, 73.) Several of the defendants also ask that, should their motions to dismiss be denied, the plaintiff be ordered to make his amended complaint more definite and certain. (See filings 47, 63, 73.) My analysis of the defendants' motions follows.

## C.   Jurisdiction

The amended complaint alleges that jurisdiction is proper under 28 U.S.C. §§ 1331 and 1332. (See Am. Compl., filing 5, ¶ 5.) However, diversity jurisdiction exists under § 1332 only "where the amount in controversy is greater than $75,000 and where there is complete diversity of citizenship." Capitol Indemnity Corp. v. Russellville Steel Co., Inc., 367 F.3d 831, 835 (8th Cir. 2004) (citing 28 U.S.C. § 1332(a)). "Complete diversity of citizenship exists where no defendants hold citizenship in a state where any plaintiff holds citizenship." Id. (citing Owen Equipment & Erection v. Kroger, 437 U.S. 365, 373 (1978)). Here, the amended complaint alleges that the plaintiff is a "major domiciliary" of Nebraska, and that Defendant Cornhusker Bank is "a banking institution duly incorporated and authorized to do and doing [sic] business in the state of Nebraska." (Am. Compl., filing 5, ¶¶ 1-2.) I also note that Defendant Pauline Smith is alleged to be an employee of Defendant Cornhusker Bank, though the amended complaint does not allege specifically that Smith is a citizen of Nebraska. In any event, the amended complaint does not allege that there is complete diversity of citizenship. I therefore find that jurisdiction does not exist under § 1332.

## II.   STANDARD OF REVIEW

### A.   Federal Rule of Civil Procedure 12(b)(1)

A motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1) may challenge either the factual truthfulness or the facial sufficiency of the plaintiff's jurisdictional allegations. See, e.g., Osborn v. United States, 918 F.2d 724, 729 n.6 (8th Cir. 1990)).

A court deciding a motion under Rule12(b)(1) must distinguish between a "facial

4

attack" and a "factual attack."  In the first instance, the court restricts itself to the face of the pleadings, . . . and the non-moving party receives the same protections as it would defending against a motion brought under Rule 12(b)(6).  The general rule is that a complaint shall not be dismissed "'unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'"  In a factual attack, the court considers matters outside the pleadings . . . and the non-moving party does not have the benefit of 12(b)(6) safeguards.

Osborn, 918 F.2d at 729 n.6 (citations omitted).  Continuing, the court explained factual attacks in greater detail:

[H]ere the trial court may proceed as it never could under 12(b)(6) or Fed. R. Civ. P. 56.  Because at issue in a factual 12(b)(1) motion is the trial court's jurisdiction--its very power to hear the case--there is substantial authority that the trial court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case.  In short, no presumptive truthfulness attaches to the plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims.  Moreover, the plaintiff will have the burden of proof that jurisdiction does in fact exist.

Id. at 730 (quoting Mortensen v. First Federal Savings and Loan Association, 549 F.2d 884, 891 (3d Cir. 1977)).  A court's election to consider affidavits or other documents submitted in support of a factual Rule 12(b)(1) motion does not convert the Rule 12(b)(1) motion into a motion for summary judgment.  See Osborn, 918 F.2d at 729.

### B.   Federal Rule of Civil Procedure 12(b)(2)

Pursuant to Federal Rule of Civil Procedure 12(b)(2), a party may move to dismiss a complaint for lack of personal jurisdiction.  "Where a federal court's subject matter jurisdiction over a case arises from the existence of a federal question, the court may exercise personal jurisdiction over a defendant if the plaintiff has properly served the defendant with process under the forum state's long arm statute and if the defendant has sufficient contacts with the forum state to satisfy procedural due process."  Enterprise Rent-A-Car Co. v. U-Haul International, Inc., 327 F. Supp. 2d 1032, 1036 (E.D. Mo. 2004) (citing Omi Capital Int'l, Ltd. v. Rudolf Wolff & Co., Ltd., 484 U.S. 97, 104-105 (1987); Bird v. Parsons, 289 F.3d 865, 871 (6th Cir. 2002)).  Since Nebraska's long-arm statute confers personal jurisdiction "to the fullest extent permitted by the United States Constitution," my analysis need only focus upon whether the exercise of personal

5

jurisdiction over a defendant violates due process.  Stanton v. St. Jude Medical, Inc., 340 F.3d 690, 693 (8th Cir. 2003) (citing, inter alia, Barone v. Rich Bros. Interstate Display Fireworks Co., 25 F.3d 610, 612 (8th Cir. 1994)); see also Wagner v. Unicord Corp., 526 N.W.2d 74, 77-78 (Neb. 1995).

Due process requires that a non-resident defendant have sufficient "minimum contacts" with the forum state "such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" International Shoe Co. v. Washington, 326 U.S. 310, 316 (1945) (quoting Milliken v. Meyer, 311 U.S. 457, 463 (1940)).[4]  There are two "theories for evaluating minimum contacts[:] general jurisdiction and specific jurisdiction."  Dever v. Hentzen Coatings, Inc., 380 F.3d 1070, 1073 (8th Cir. 2004).  "Under the theory of general jurisdiction, a court may hear a lawsuit against a defendant who has 'continuous and systematic' contacts with the forum state, even if the injuries at issue in the lawsuit did not arise out of the defendant's activities directed at the forum."  Id. (citing Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 415-16 (1984)).  "In contrast, specific jurisdiction is viable only if the injury giving rise to the lawsuit occurred within or had some connection to the forum state."  Id. (citing, inter alia, Hall, 466 U.S. at 414).  Under either theory, the defendant must have committed "some act by which the defendant purposely avail[ed] itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws."  Id. (quoting Hanson v. Denckla, 357 U.S. 235, 253 (1958)); see also Burger King Corp. v. Rudzewicz, 471 U.S. 462, 474-76 (1985).  Once it has been determined that a defendant had "minimum contacts" with the forum state, I must then consider other circumstances that might affect the determination of "whether the assertion of personal jurisdiction would comport with 'fair play and substantial justice.'" Dever, 380 F.3d at 1073 (quoting Rudzewicz, 471 U.S. at 476).

The Eighth Circuit has instructed the district courts to consider the following factors when determining whether personal jurisdiction exists:

---

[4]In a diversity case, the non-resident defendant's due process rights are rooted in the Fourteenth Amendment.  In a federal question case, those rights spring from the Fifth Amendment.  In either case, a "minimum contacts" analysis should be conducted.  See Dakota Indus., Inc. v. Dakota Sportswear, Inc., 946 F.2d 1384, 1389 n.2 (8th Cir. 1991).

(1) the nature and quality of [a defendant's] contacts with the forum state; (2) the quantity of such contacts; (3) the relation of the cause of action to the contacts; (4) the interest of the forum state in providing a forum for its residents; and (5) [the] convenience of the parties.

Dever, 380 F.3d at 1073-74 (quoting Burlington Indus. v. Maples Indus., Inc., 97 F.3d 1100, 1102 (8th Cir. 1996)).  The first three of these factors are to be given significant weight, though it must be recalled that factor three may not apply under the general jurisdiction theory.  See id. (citing Burlington Indus., 97 F.3d at 1102; Hall, 466 U.S. at 414-15).

"To survive a motion to dismiss for lack of personal jurisdiction, a plaintiff 'must state sufficient facts in the complaint to support a reasonable inference that [the defendants] can be subjected to jurisdiction within the state.  Once jurisdiction ha[s] been controverted or denied, [the plaintiff] ha[s] the burden of proving such facts.'"  Dever v. Hentzen Coatings, Inc., 380 F.3d 1070, 1072 (8th Cir. 2004) (quoting Block Indus. v. DHJ Indus., Inc., 495 F.2d 256, 259 (8th Cir. 1974)).  "[J]urisdiction need not be proved by a preponderance of the evidence until trial or until the court holds an evidentiary hearing."  Dakota Indus., Inc. v. Dakota Sportswear, Inc., 946 F.2d 1384, 1387 (8th Cir. 1991).  However, to meet its burden in opposition to a motion to dismiss, the plaintiff must make a prima facie showing of jurisdiction.  See id.  To make this showing, the plaintiff cannot simply rely upon the allegations of the complaint, but must submit affidavits or other exhibits to establish personal jurisdiction.  Dever, 380 F.3d at 1072-73.

### C.   Federal Rule of Civil Procedure 12(b)(6)

Pursuant to Rule 12(b)(6), "a motion to dismiss a complaint should not be granted unless it appears beyond doubt that the plaintiff can prove no set of facts which would entitle him to relief."  Morton v. Becker, 793 F.2d 185, 187 (8th Cir. 1986) (citation omitted); see also Hishon v. King & Spalding, 467 U.S. 69, 73 (1984).  In resolving such motions, all well-pleaded allegations in the complaint must be taken as true, and the complaint and all reasonable inferences arising therefrom must be weighed in favor of the plaintiff.  Morton, 793 F.2d at 187.  When considering a Rule 12(b)(6) motion to dismiss, the court has the discretion to decide whether it will accept materials outside the pleadings.  See Skyberg v. United Food and Commercial Workers International Union, 5 F.3d 297, 302 n.2 (8th Cir. 1993).   If the Court accepts outside information, it must convert the motion to dismiss to one for summary judgment.

See Fed. R. Civ. P. 12(b)(6).  Upon conversion, the court applies the standard for summary judgment set forth in Rule 56.  See id.

### III.   ANALYSIS

#### A.   Defendant Cornhusker Bank's Motion to Dismiss[5]

The Bank argues that portions of the amended complaint must be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6).  (See generally filings 41, 42.)  First, the Bank suggests that the plaintiff's amended complaint must be dismissed to the extent that it is based upon 15 U.S.C. § 1681s-2(a) because private litigants lack standing to sue under this section.  (See filing 42 at 2-5.)  I agree.  Individual consumers may bring civil actions based upon certain alleged violations of the FCRA.  See 15 U.S.C. §§ 1681n & o.  However, § 1681s-2(c) provides specifically that § 1681n and § 1681o do not apply to violations of § 1681s-2(a), "except as provided in section 1681s(c)(1)(B)."  The latter section permits certain suits brought by States, but not individuals.  See 15 U.S.C. § 1681s(c)(1)(B).  In addition, § 1681s-2(d) states that § 1681s-2(a) "shall be enforced exclusively . . . by the Federal agencies and officials and the State officials identified in section 1681s of this title."  Since private enforcement of § 1681s-2(a) is not permitted, the plaintiff's claims must be dismissed to the extent that they are based upon this section.  See Nelson v. Chase Manhattan Mortgage Corp., 282 F.3d 1057, 1059 (9th Cir. 2002).

Second, the Bank argues that the plaintiffs defamation and invasion of privacy claims must be dismissed because they are preempted by the FCRA.  (See filing 42 at 5-10.)  For the following reasons, I must reject the Bank's argument.

The FCRA contains two "preemption provisions" that appear to restrict state law claims against "persons" who furnish information to consumer reporting agencies.[6]  The first states,

---

[5]Cornhusker Bank filed and served its motion to dismiss and supporting brief on August 30, 2005.  (See filings 41, 42.)  The plaintiff's response brief, which was filed on October 17, 2005, was not filed within twenty days of this date.  (See filing 69.)  See also NECivR 7.1(b)(1)(B).  Therefore, the response brief will not be considered.

[6]There appears to be no dispute that the Bank is a "furnisher" of information to consumer reporting agencies for the purposes of the relevant statutes.

8

> Except as provided in sections 1681n and 1681o of this title, no consumer may bring any action or proceeding in the nature of defamation, invasion of privacy, or negligence with respect to the reporting of information against any consumer reporting agency, any user of information, or any person who furnishes information to a consumer reporting agency, based on information disclosed pursuant to section 1681g, 1681h, or 1681m of this title, or based on information disclosed by a user of a consumer report to or for a consumer against whom the user has taken adverse action, based in whole or in part on the report except as to false information furnished with malice or willful intent to injure such consumer.

15 U.S.C.A. § 1681h(e) (West Supp. 2005) (footnote omitted).  The Bank does not argue that this provision preempts the plaintiffs' claims, as the plaintiff has alleged that the defendants acted "with willful intent to injure or maliciously."  (See Am. Compl., filing 5, ¶¶ 47, 50, 52, 54. See also filing 42 at 5.)  Instead, the Bank submits that the plaintiff's claims are preempted under a second preemption provision, which states, in relevant part, as follows:

> General exceptions[.]  No requirement or prohibition may be imposed under the laws of any State . . . with respect to any subject matter regulated under . . . section 1681s-2 of this title, relating to the responsibilities of persons who furnish information to consumer reporting agencies . . . .

15 U.S.C.A. § 1681t(b)(1)(F) (West Supp. 2005).

I agree with the Bank that the plaintiff's defamation and invasion of privacy claims would not be preempted under § 1681h(e).  I also agree that the plaintiff's claims would be preempted if § 1681t(b)(1)(F) applies.  Since the sections seem to be in conflict, I must determine which of these statutes to apply in this case.

I am aware of no Eighth Circuit case addressing the apparent conflict between § 1681h(e) and § 1681t(b)(1)(F).  District courts that have analyzed this conflict have reached three different conclusions.  First, some courts have found that all state law claims relating to the duties of persons who furnish information to consumer credit reporting agencies are preempted under § 1681t(b)(1)(F) because this newer section supercedes § 1681h(e).  See, e.g., Hasvold v. First USA Bank, N.A., 194 F. Supp. 2d 1228, 1239 (D. Wyo. 2002); Jaramillo v. Experian Info. Solutions, Inc., 155 F. Supp. 2d 356, 362-63 (E.D. Pa. 2001).   However, Congress did not clearly state its intent to repeal § 1681h(e) when it added § 1681t to the FCRA.  Therefore, the rule set forth in Hasvold and Jaramillo seems to conflict with the "cardinal principle of statutory construction that a statute ought, upon the whole, to be so construed that, if it can be prevented,

9

no clause, sentence, or word shall be superfluous, void, or insignificant." TRW Inc. v. Andrews, 534 U.S. 19, 31 (2001). See also Johnson v. CitiMortgage, Inc., 351 F. Supp. 2d 1368, 1374 (N.D. Ga. 2004).

Second, some courts have found that § 1681t(b)(1)(F) does not preempt state tort claims. The reasoning underlying this conclusion is twofold: First, these courts often assert that § 1681t(b)(1)(F) applies only to claims raised under state statutes, while § 1681h(e) applies to common law tort claims. See, e.g., Johnson v. CitiMortgage, Inc., 351 F. Supp. 2d 1368, 1375-76 (N.D. Ga. 2004); Jeffrey v. Trans Union, L.L.C., 273 F. Supp. 2d 725, 726-28 (E.D. Va. 2003); Carlson v. Trans Union, LLC, 259 F. Supp. 2d 517, 521 (N.D. Tex. 2003). Second, these courts hold that § 1681t(b)(1)(F), which is a general provision, must yield to the more specific language of § 1681h(e), which addresses actions "in the nature of defamation, invasion of privacy, or negligence." See, e.g., Johnson, 351 F. Supp. 2d at 1375-76; McCloud v. Homeside Lending, 309 F. Supp. 2d 1335, 1341-42 (N.D. Ala. 2004); Jeffrey, 273 F. Supp. 2d at 726-28; Gordon v. Greenpoint Credit, 266 F. Supp. 2d 1007, 1013 (S.D. Iowa 2003). However, the rule adopted by these courts has been criticized on the ground that § 1681t(b)(1)(F) does not specify that it applies only to state statutes. See Malm v. Household Bank, No. Civ. 03-4340ADMAJB, 2004 WL 1559370, at *6 (D. Minn. July 7, 2004).

Finally, some courts have sought to give effect to both statutes by adopting a "temporal" approach. Malm v. Household Bank, No. Civ. 03-4340ADMAJB, 2004 WL 1559370, at *6 (D. Minn. July 7, 2004). Under this approach, § 1681t(b)(1)(F) is applied only after a furnisher of information has received notice of a dispute from a credit reporting agency, while § 1681h(e) "applies only up until the time that the furnisher receives such notice." Johnson, 351 F. Supp. 2d at 1374. See also Stafford v. Cross Country Bank, 262 F. Supp. 2d 776, 785-89 (W.D. Ky. 2003); Aklagi v. NationsCredit Fin. Servs. Corp., 196 F. Supp. 2d 1186, 1194-96 (D. Kan. 2002). In other words, according to the "temporal" approach, a claim in the nature of defamation, invasion of privacy, or negligence can proceed, subject to the limitations set forth in § 1681h(e), if the claim is based upon conduct that occurred before the furnisher received notice of the dispute. See Aklagi, 196 F. Supp. 2d at 1194-96. However, if the claim is based upon conduct that occurred after the furnisher received notice of the dispute, the claim is completely preempted

under § 1681t(b)(1)(F).  See id.

The Bank argues that I should adopt the approach taken by the court in Stafford v. Cross Country Bank, 262 F. Supp. 2d 776, 785-89 (W.D. Ky. 2003), because it is "the most logical and widely-accepted interpretation of the interplay between these two sections."  (See filing 42 at 6.) Stafford's analysis is based on the "temporal" approach, which was first employed in Aklagi v. NationsCredit Fin. Servs. Corp., 196 F. Supp. 2d 1186, 1194-96 (D. Kan. 2002).  The reasoning underlying this approach begins with the premise that since § 1681t(b)(1)(F) bars the imposition of any requirement or prohibition under the laws of any State "with respect to any subject matter regulated under . . . section 1681s-2," a defamation claim would be preempted under § 1681t(b)(1)(F) to the extent that the defendant's conduct falls within the subject matter regulated under § 1681s-2.[7]  Aklagi, 196 F. Supp. 2d at 1194.  In Aklagi, in order to determine whether the defendant's conduct fell within the subject matter regulated under § 1681s-2, the court decided to consider separately two discrete time periods: 1) the time period beginning when the defendant made a loan to the plaintiff and ending when it first received notice of the plaintiffs' dispute; and 2) the time period after the defendant received notice of the plaintiffs' dispute.  Aklagi, 196 F. Supp. 2d at 1194.  The court went on to explain that conduct occurring within the second time period "falls squarely within § 1681s-2(a)(1)(B) and, therefore, it is 'subject matter regulated under . . . § 1681s-2 of this title.'"  Id. at 1194-95.[8]  Thus, the court held the plaintiffs'

---

[7]I note parenthetically that this premise is not universally accepted.  Some courts have concluded that the phrase "requirement[s] or prohibition[s] . . . imposed under the laws of any State," see § 1681t(b)(1)(F), refers only to statutory claims, not common law claims such as defamation.  See, e.g., Johnson v. CitiMortgage, Inc., 351 F. Supp. 2d 1368, 1375-76 (N.D. Ga. 2004); Jeffrey v. Trans Union, L.L.C., 273 F. Supp. 2d 725, 726-28 (E.D. Va. 2003); Carlson v. Trans Union, LLC, 259 F. Supp. 2d 517, 521 (N.D. Tex. 2003).

[8]15 U.S.C. § 1681s-2(a)(1)(B) provides,

Reporting information after notice and confirmation of errors
A person shall not furnish information relating to a consumer to any consumer reporting agency if--
(i) the person has been notified by the consumer, at the address specified by the person for such notices, that specific information is inaccurate; and
(ii) the information is, in fact, inaccurate.

11

defamation claim was preempted to the extent that it was predicated on the defendant's furnishing of inaccurate information to a consumer reporting agency <u>after</u> it received notice of the plaintiff's dispute.  <u>See</u> <u>id.</u> at 1195.  The court then stated,

> On the other hand, [the defendant] also furnished inaccurate information to a consumer reporting agency after it made the loan but <u>before</u> it received notice of the [plaintiffs'] dispute.  This particular conduct is not regulated under § 1681s-2.

<u>Id.</u> at 1195.  The latter statement is problematic, because § 1681s-2 <u>does</u> prohibit the furnishing of inaccurate information before the furnisher receives notice of any dispute, at least under some circumstances.  Section 1681s-2(a)(1)(A) provides, "A person shall not furnish any information relating to a consumer to any consumer reporting agency if the person knows or consciously avoids knowing that the information is inaccurate."  This prohibition is not limited to the time period after the furnisher receives notice of a dispute.  Thus, if a defendant <u>knowingly</u> furnishes inaccurate information to a consumer reporting agency before it receives notice of a dispute, such conduct <u>would</u> be regulated under § 1681s-2, and a claim based upon that conduct would be preempted under § 1681t(b)(1)(F).

The court recognized this potential problem, but dispelled it:

> Admittedly, § 1681s-2(a)(1) prohibits [the defendant] from furnishing information regarding a consumer if [the defendant] "knows or consciously avoids knowing that the information is inaccurate."  However, in this case, there is no evidence that [the defendant] knew or consciously avoided knowing that the thief obtained the loan by fraud. . . .  [E]ven if the court were to assume that [the defendant] was negligent because it made the loan to the thief despite all of the discrepancies among the various documents the thief submitted, that would not rise to the level of [the defendant] knowing or consciously avoiding knowing that the loan was fraudulently obtained.  Accordingly, any state law defamation claim that is predicated on [the defendant] furnishing inaccurate information to a consumer reporting agency <u>before</u> receiving notice of the [plaintiffs'] dispute is <u>not</u> regulated under § 1681s-2.  Therefore, it is not preempted by § 1681t(b)1)(F).

<u>Aklagi</u>, 196 F. Supp. 2d at 1195.  The court then proceeded to determine whether the defamation claim that was predicated on the defendant's furnishing of inaccurate information before receiving notice of the dispute would be preempted by § 1681h(e), and concluded that the claim was preempted because the plaintiffs failed to establish that the defendant acted "with malice or willful intent to injure" the plaintiffs during this time period.  <u>See</u> <u>id.</u> at 1195-96.

12

Although the court determined that "for the purposes of evaluating whether a defendant is entitled to qualified immunity under Section 1681h(e) in cases of defamation . . . a statement will be deemed to have been made with malice if made 'with knowledge that it was false or with reckless disregard of whether it was false or not,'" Aklagi, 196 F. Supp. 2d at 1195 (quoting Dornhecker v. Ameritech Corp., 99 F. Supp. 2d 918, 931 (N.D. Ill. 2000)) (emphasis added), the court evidently failed to observe that if a person furnishes information to a consumer reporting agency with knowledge that it is inaccurate, his conduct not only satisfies the "malice or willful intent to injure" criterion of § 1681h(e), but also falls within the ambit of § 1681s-2(a)(1)(A). In other words, under the "temporal" approach, if a plaintiff does succeed in avoiding preemption under § 1681h(e) by establishing that the defendant furnished false information to a consumer reporting agency "with malice or willful intent to injure," his claim will simultaneously become one that is regulated under § 1681s-2(a)(1)(A) and will therefore be preempted under § 1681t(b)(1)(F). This means that when it is applied correctly, the temporal approach does not, and cannot, allow claims to proceed under § 1681h(e) to the extent that they are based upon conduct that occurs before the furnisher receives notice of a dispute; nor does the approach limit the application of § 1681t(b)(1)(F) to those claims that are based on actions that occur only after the furnisher receives notice of a dispute. Thus, the chief advantages claimed by the "temporal" approach, i.e., that it gives effect to both FCRA preemption provisions and avoids an implied repeal § 1681h(e), are illusory. See Stafford v. Cross Country Bank, 262 F. Supp. 2d 776, 785-87 (W.D. Ky. 2003).[9]   I shall not adopt this approach.

It seems to me that the best approach for reconciling § 1681h(e) and § 1681t(b)(1)(F) is based upon the basic rules of statutory construction. "[S]pecific statutory language should control more general language when there is a conflict between the two." National Cable & Telecommunications Association, Inc. v. Gulf Power Co., 534 U.S. 327, 335 (2002). See also,

---

[9]To its credit, the court in Stafford correctly applied the "temporal" approach and recognized that if the plaintiff were able to meet "the higher standard to pursue defamation and slander claims [under § 1681h(e)], those claims would . . . be preempted by § 1681t(b)(1)(F)" because "§ 1681s-2 regulates the furnishing of information if done knowingly." Stafford, 262 F. Supp. 2d at 788. The court also acknowledged that the reasoning of the approach "appears circuitous." Id. at 789 n.12.

e.g., Morales v. Trans World Airlines, Inc., 504 U.S. 374, 384-85 (1992); Fourco Glass Co. v. Transmirra Products Corp., 353 U.S. 222, 228-29 (1957).  Since § 1681h(e) applies specifically to actions "in the nature of defamation, invasion of privacy, or negligence," and since § 1681t(b) "is a general preemption provision both by its terms and its given moniker," Gordon v. Greenpoint Credit, 266 F. Supp. 2d 1007, 1013 (S.D. Iowa 2003), I find that § 1681h(e) should be applied to determine whether the plaintiff's defamation and invasion of privacy claims are preempted.  I note in passing that this interpretation does not violate the cannon that "courts should disfavor interpretations that render language superfluous," Connecticut Nat. Bank v. Germain, 503 U.S. 249, 253 (1992), because § 1681t(b)(1)(F) remains effective to bar any "requirement or prohibition . . . imposed under the laws of any State," 15 U.S.C. § 1681t(b)(1)(F),  that is not "in the nature of defamation, invasion of privacy, or negligence," 15 U.S.C. § 1681h(e).  Cf. Johnson v. CitiMortgage, Inc., 351 F. Supp. 2d 1368, 1375-76 (N.D. Ga. 2004) (quoting Carlson v. Trans Union, LLC, 259 F. Supp. 2d 517, 521 (N.D. Tex. 2003)) (holding that § 1681t(b)(1)(F) is meant to apply only to state statutory regulation).

Since § 1681h(e) must be applied to determine whether the plaintiff's defamation and invasion of privacy claims are preempted, and since the Bank agrees that those claims are not preempted under § 1681h(e), I must deny the Bank's motion to dismiss those claims.

Finally, I note that the Bank's brief in support of its motion to dismiss includes a footnote suggesting that the plaintiff's "unfair and deceptive trade and business practices" claim must be dismissed because "this sole conclusory 'allegation' is not sufficient to state any sort of cognizable legal claim," and because the claim "is preempted by § 1681t(b)(F)(1)."  (Filing 42 at 10 n.3.)  I agree that the plaintiff's "unfair and deceptive trade and business practices" claim is conclusory.  In order to avoid dismissal, "the complaint must contain sufficient facts, as opposed to mere conclusions, to satisfy the legal requirements of the claim."  DuBois v. Ford Motor Credit Co., 276 F.3d 1019, 1022 (8th Cir. 2002).  Here, the amended complaint contains two paragraphs concerning unfair and deceptive trade and business practices.  The first states, "Defendants have engaged in unfair and deceptive trade and business practices and is [sic] liable unto plaintiff under state laws for those violations."  (Am. Compl., filing 5, ¶ 53.)  The second states, "Defendants have, with willful intent to injure or maliciously, engaged in unfair and

14

deceptive trade and business practices and is [sic] liable unto plaintiff under various state laws for those violations."  (Id. ¶ 54.)  Both of these paragraphs appear below the heading, "Invasion of Privacy," (see id. at 9), and below a statement "adopt[ing] the averments and allegations" set forth in all of the preceding paragraphs of the amended complaint, (see id. ¶ 48).  There are no allegations that identify the "unfair and deceptive trade and business practices" that the Bank, or any other defendant, allegedly engaged in.  Nor has the plaintiff alleged when these practices might have occurred.  The plaintiff has also failed to identify, either in his amended complaint or in a brief opposing the Bank's motion to dismiss, the basis of his cause of action; instead, he merely alleges that the defendants' business practices violate "various state laws."  (Id. ¶ 54.)  In short, the plaintiff has done nothing more than plead the legal conclusion that the defendants engaged in "unfair and deceptive trade and business practices."   This is insufficient, and I find therefore that the plaintiff's "unfair and deceptive trade and business practices" claim must be dismissed.

**B.   Defendants San Diego Child Support Services' and Steven A. Aronis' Motions to Dismiss**

Defendants San Diego Child Support Services and Steven A. Aronis argue, in a joint brief, that the amended complaint must be dismissed pursuant to Federal Rules of Civil Procedure 12(b)(1), 12(b)(2), and 12(b)(6).  (See generally filing 46.)  First, the defendants argue that the plaintiff has failed to establish that this court can exercise personal jurisdiction over them.  I agree.

As I noted above, a plaintiff "must state sufficient facts in the complaint to support a reasonable inference that [the defendants] can be subjected to personal jurisdiction within the state."  Dever v. Hentzen Coatings, Inc., 380 F.3d 1070, 1072 (8th Cir. 2004) (quoting Block Indus. v. DHJ Indus., Inc., 495 F.2d 256, 259 (8th Cir. 1974)).  The plaintiff's amended complaint contains no allegations suggesting that either defendant "purposely avail[ed] itself of the privilege of conducting activities within [Nebraska], thus invoking the benefits and protections of its laws."  Dever, 380 F.3d at 1073 (quoting Hanson v. Denckla, 357 U.S. 235, 253 (1958); see also Burger King Corp. v. Rudzewicz, 471 U.S. 462, 474-76 (1985).  Furthermore, the defendants' motions to dismiss are supported by an index of evidence that contains

15

affidavits[10] challenging the existence of personal jurisdiction, and the plaintiff has filed no response to the defendants' motions.[11] Since the plaintiff has failed to meet its burden of making a prima facie showing of personal jurisdiction, see Dever, 380 F.3d at 1072-73; Dakota Indus., Inc. v. Dakota Sportswear, Inc., 946 F.2d 1384, 1387 (8th Cir. 1991), I find that the defendants' motion to dismiss must be granted to the extent that it is based upon Federal Rule of Civil Procedure 12(b)(2). Since there is no personal jurisdiction over these defendants, I need not consider their arguments that the amended complaint is also subject to dismissal under Rules 12(b)(1) and 12(b)(6).

### C.    Defendant Adam Wertheimer's Motion to Dismiss

Defendant Adam Wertheimer argues that amended complaint must be dismissed pursuant to Federal Rules of Civil Procedure 12(b)(2). (See filings 47, 48, 49.) I agree. For the same reasons set forth in the preceding section of this memorandum, I find that the plaintiff has failed to meet its burden of making a prima facie showing of personal jurisdiction with respect to Defendant Wertheimer. The defendant's motion to dismiss will therefore be granted.

### D.    Defendant Louisiana Department of Social Services' Motion to Dismiss

Defendant Louisiana Department of Social Services argues that the amended complaint must be dismissed pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). (See generally filing 59.) First, the defendant argues that this court lacks subject matter jurisdiction because the Louisiana Department of Social Services is immune from suit under the Eleventh Amendment. (See id. at 1-3.) I agree.

Sovereign immunity is a jurisdictional defense that may be raised in a Rule 12(b)(1) motion. See, e.g., Hagen v. Sisseton-Wahpeton Community College, 205 F.3d 1040, 1043 (8th

---

[10]Pursuant to 28 U.S.C. § 1746, the defendants' unsworn declarations under penalty of perjury are like in force and effect to an affidavit.

[11]To be precise, I find that the document entitled "Plaintiff's Response and Opposition to Motion to Dismiss," which was filed on October 17, 2005, is not a timely response to San Diego Child Support Services' and Steven A. Aronis' motions to dismiss. (See filings 43, 44, 69); see also NECivR 7.1(b)(1)(B). I also note that the plaintiff's untimely response does not address personal jurisdiction, nor is it accompanied by affidavits or other exhibits that might establish a prima facie showing of personal jurisdiction. (See generally filing 69.)

Cir. 2000).  The Eleventh Amendment provides sovereign immunity to states that are sued by citizens of another state.  See U.S. Const. amend. XI.  The Amendment has been interpreted to extend immunity to states and state agencies from suits brought not only by citizens of other states, but also by the state's own citizens.  See, e.g., Doe v. Nebraska, 345 F.3d 593, 598 (8th Cir. 2003).  However, there are two circumstances in which an individual may sue a state.  See College Savings Bank v. Florida Prepaid Postsecondary Education Expense Board, 527 U.S. 666, 670 (1999).  "First, Congress may authorize such a suit in the exercise of its power to enforce the Fourteenth Amendment--an Amendment enacted after the Eleventh Amendment and specifically designed to alter the federal-state balance."  Id. (citing Fitzpatrick v. Bitzer, 427 U.S. 445 (1976)).  "Second, a State may waive its sovereign immunity by consenting to suit."  Id. (citing Clark v. Barnard, 108 U.S. 436, 447-448 (1883)).

The amended complaint alleges that Defendant Louisiana Department of Social Services is a state agency.  (See Am. Compl., filing 5, ¶ 2.)  The defendant is therefore immune from suit unless its immunity has been abrogated by Congress or the defendant has consented to the suit.

The amended complaint contains claims based upon the FCRA, along with various state causes of action.  (See generally Am. Compl., filing 5.)  The plaintiff has not suggested that Congress abrogated the defendant's sovereign immunity with respect to any of these claims.[12]  I note parenthetically that two district courts have concluded that since "Congress enacted the FCRA pursuant to its Commerce Clause power–instead of its power under section 5 of the Fourteenth Amendment–it lacked the authority to abrogate a state's sovereign immunity through that statute."  Sorrell v. Illinois Student Assistance Com'n, 314 F. Supp. 2d 813, 817 (C.D. Ill. 2004); see also O'Diah v. New York City, No. 02 Civ. 274(DLC), 2002 WL 1941179, at *6 (S.D.N.Y. Aug. 21, 2002).  Given the absence of any argument or authority to the contrary, I find that the defendant's sovereign immunity has not been abrogated.  Similarly, since the plaintiff has offered no resistance to the defendant's argument that the State of Louisiana has not

---

[12]The plaintiff's response brief was filed within twenty days of the filing of the Louisiana Department of Social Services' motion to dismiss and supporting brief, (see filings 59, 61, 69), and it is therefore timely insofar as this defendant's motion to dismiss is concerned, see NECivR 7.1(b)(1)(B).  I note, however, that the plaintiff's brief appears to respond only to the arguments raised in Defendant Cornhusker Bank's motion to dismiss.

consented to be sued in this court, I must also conclude that the defendant has not waived its sovereign immunity.

In view of the foregoing, I conclude that the Louisiana Department of Social Services is immune from suit under the Eleventh Amendment. The defendant's motion to dismiss will therefore be granted. Since the defendant is immune, I need not consider its argument that the complaint must also be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6).

### E.   Defendants Kimberly Lorenzo's and Jefferson Parish District Attorney's Office's Motion to Dismiss

Defendants Kimberly Lorenzo and Jefferson Parish District Attorney's Office have filed jointly a motion to dismiss the amended complaint pursuant to Federal Rule of Civil Procedure 12(b)(2) and 12(b)(6). (See filings 63-65.) Since the plaintiff's complaint does not state sufficient facts "to support a reasonable inference that [the defendants] can be subjected to personal jurisdiction within [Nebraska]," and since the plaintiff has failed to meet its burden of making a prima facie showing of personal jurisdiction in the face of the defendants' evidence challenging jurisdiction, Dever v. Hentzen Coatings, Inc., 380 F.3d 1070, 1072 (8th Cir. 2004) (quoting Block Indus. v. DHJ Indus., Inc., 495 F.2d 256, 259-60 (8th Cir. 1974)),[13] I find that the defendants' motion to dismiss must be granted insofar as it is based upon Rule 12(b)(2). Since there is no personal jurisdiction over these defendants, I need not consider their argument that the amended complaint is also subject to dismissal under Rule 12(b)(6).

### F.   Defendant Pauline Smith's Motion to Dismiss

Defendant Pauline Smith argues that the plaintiff's FCRA, defamation, invasion of privacy, and unfair trade practices claims must be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6). (See filing 73 at 1.) In addition, to the extent that any of the plaintiff's claims remain viable, she seeks an order requiring the plaintiff make his amended complaint more definite and certain. (See id.)

---

[13]Although the "Plaintiff's Response and Opposition to Motion to Dismiss," filing 69, was filed within twenty days of Defendants Kimberly Lorenzo's and Jefferson Parish District Attorney's Office's motion to dismiss, it is not accompanied by affidavits or other exhibits that might establish a prima facie showing of personal jurisdiction. Indeed, the plaintiff's response does not address personal jurisdiction at all.

First, Smith argues that the plaintiff's amended complaint must be dismissed to the extent that it is based upon 15 U.S.C. § 1681s-2(a) because private litigants lack standing to sue under this section.  (See filing 74 at 2-5.)  For the reasons I have explained previously, I agree with Smith's argument.  (See supra Part III.A (citing 15 U.S.C. §§ 1681n; 1681o; 1681s(c); 1681s-2(c)-(d); Nelson v. Chase Manhattan Mortgage Corp., 282 F.3d 1057, 1059 (9th Cir. 2002)).)  The plaintiff's claims will be dismissed to the extent that they are based upon § 1681s-2(a).

Second, Smith argues that the amended complaint must be dismissed to the extent that it is based upon 15 U.S.C. § 1681s-2(b) because she is not a "furnisher of information."  (See filing 74 at 5-7.)  She argues,

> Although the term "furnisher of information" is not expressly defined anywhere in the FCRA, it is clear that the term was not meant to include an individual such as Smith who is being sued in her capacity as an employee/agent of an entity that admittedly qualifies as a "furnisher of information."

(Id. at 6.)  I disagree.  Section 1681s-2(b)(1) states,

> Duties of furnishers of information upon notice of a dispute
> (1) In general
> After receiving notice pursuant to section 1681i(a)(2) of this title of a dispute with regard to the completeness or accuracy of any information provided by a person to a consumer reporting agency, the person shall–
> (A) conduct an investigation with respect to the disputed information;
> (B) review all relevant information provided by the consumer reporting agency pursuant to section 1681i(a)(2) of this title;
> (C) report the results of the investigation to the consumer reporting agency;
> (D) if the investigation finds that the information is incomplete or inaccurate, report those results to all other consumer reporting agencies to which the person furnished the information and that compile and maintain files on consumers on a nationwide basis; and
> (E) if an item of information is found to be inaccurate or incomplete or cannot be verified after any reinvestigation under paragraph (1), for purposes of reporting to a consumer reporting agency only, as appropriate, based on the results of the reinvestigation prompty–
> (i) modify that item of information;
> (ii) delete that item of information; or
> (iii) permanently block the reporting of that item of information.

15 U.S.C. § 1681s-2(b)(1) (emphasis added).  Although it is true that the term "furnishers of information" is not defined in the FCRA, "[t]he term 'person' means any individual, partnership,

19

corporation, trust, estate, cooperative, association, government or governmental subdivision or agency, or other entity." 15 U.S.C. § 1681a(b) (emphasis added). Therefore, it seems to me that under the plain language of the FCRA, individuals such as Smith can indeed be "furnishers of information" within the meaning of § 1681s-2(b).

In support of her argument that an individual cannot be a "furnisher of information," Smith relies primarily upon Semper v. JBC Legal Group, No. C04-2240L, 2005 WL 2172377, at *7 (W.D. Wash. Sept. 6, 2005). However, I do not read Semper to hold that individuals can never be "furnishers of information" for the purposes of § 1681s-2(b); rather, it appears that the particular individual defendant in Semper was held not to be a "'person' who could be liable under § 1681s-2(b)" because there was no evidence that the individual personally breached any duty set forth in the statute. Semper, 2005 WL 2172377, at *7.

Since I am not persuaded that individuals such as Defendant Smith are not "persons" within the meaning of § 1681s-2(b), I shall not dismiss the claims against her that are based upon that section.

Next, Smith argues that even if she is a "furnisher of information" within the meaning of § 1681s-2(b), then the plaintiff's defamation, invasion of privacy, and unfair and deceptive trade and business practices are preempted pursuant to 15 U.S.C. § 1681t(b)(1)(F). (See filing 74 at 7-13.) Smith's argument mirrors that set forth in the brief filed by Cornhusker Bank, (see filing 42 at 5-10), and I shall reject it for the reasons discussed above, (see supra Part III.A).

Smith also argues that the plaintiff's "unfair and deceptive trade and business practices" claim must be dismissed because "this sole conclusory 'allegation' is not sufficient to state any sort of cognizable legal claim." (Filing 74 at 13.) This argument too was advanced by the Bank, (see filing 42 at 10 n.3), and for the reasons set forth above, I find that the plaintiff's "unfair and deceptive trade and business practices" claim must be dismissed. (See supra Part III.A (citing DuBois v. Ford Motor Credit Co., 276 F.3d 1019, 1022 (8th Cir. 2002)).)

Finally, Smith argues that to the extent that any claims remain, I should order the plaintiff to make a more definite statement of his claims. (See filing 74 at 13-15; see also filing 73 at 2-5.) I agree with Smith that the amended complaint is "so vague and ambiguous that [Smith] cannot reasonably be required to frame a responsive pleading," Fed. R. Civ. P. 12(e); however, it

seems to me that without engaging in any discovery, the plaintiff cannot be expected to provide the detail that Smith requests in her motion.  I shall therefore direct the plaintiff to file a statement addressing each of the following matters:

1.      Whether Smith is alleged to have personally reported inaccurate  information regarding the plaintiff to any of the entities listed in paragraph 11 of the amended complaint;

2.      Whether the plaintiff alleges that any of the consumer reporting agencies listed in paragraph 12 of the amended complaint forwarded notice of the plaintiff's disputes to Smith personally;

3.      Whether Smith is alleged to have committed the acts and omissions set forth in paragraph 13 of the amended complaint;

4.      Whether Smith is alleged to have committed the acts and omissions set forth in paragraph 14 of the amended complaint;

5.      Whether plaintiff alleges that Smith was required to take the actions described in paragraph 15 of the amended complaint;

6.      Which actions taken by Smith allegedly violate § 1681s-2(b);

7.      Whether Smith was notified by the plaintiff of errors and, if so, whether Smith failed to report those errors to the consumer credit reporting agencies as alleged in paragraph 20 of the amended complaint;

8.      Whether Smith is alleged to have published information that was "negative and damaging to the plaintiff" as alleged in paragraph 21 of the amended complaint;

9.      Whether Smith is alleged to have committed the acts set forth in paragraph 23 of the amended complaint;

10.     Whether Smith is alleged to have received the notification and taken the actions alleged in paragraph 25 of the amended complaint;

11.     Whether Smith was a party to the agreements and contracts referred to in paragraph 26 of the amended complaint;

12.     Whether Smith is alleged to have committed the acts set forth in paragraph 32 of the amended complaint;

13.    Whether Smith is alleged to have received the notification and committed the acts referred to in paragraph 36 of the amended complaint;

14.    Whether Smith is alleged to have committed the acts set forth in paragraph 38 of the amended complaint;

15.    Whether Smith is alleged to have committed the acts set forth in paragraph 40 of the amended complaint;

16.    Whether Smith is alleged to have defamed the plaintiff as set forth in paragraph 46 of the amended complaint, and if so, a general description of the defamatory statement must be provided;

17.    Whether Smith is alleged to have invaded the plaintiff's privacy as set forth in paragraph 49 of the amended complaint, and if so, the nature of the invasion must be described; and

18.    Whether Smith is alleged to have "intentionally inflicted humiliation and emotional distress and mental anguish" upon the plaintiff as alleged in paragraph 51 of the amended complaint, and if so, the manner in which Smith did so must be described.[14]

The plaintiff shall file the statement within ten days of the date of this order.  If the statement is not filed in good time, the amended complaint may be stricken as to Defendant Smith.  See Fed. R. Civ. P. 12(e).

**IT IS ORDERED** that:

1.    The defendants' motions to dismiss, filings 41, 43, 44, 47, 61, 63, 73, are granted in part and denied in part as explained in the memorandum accompanying this order;

2.    The plaintiff's claims against Defendant Cornhusker Bank and Pauline Smith are dismissed to the extent that they are based upon 15 U.S.C. § 1681s-2(a) and "unfair and deceptive trade and business practices";

3.    Defendants San Diego Child Support Services, Steven A. Aronis, Adam

---

[14]Although Smith also asks for a more definite statement of the plaintiff's "unfair and deceptive trade and business practices" claim, such a statement need not be provided in view of the fact that I have dismissed that claim.

22

Wertheimer, Kimberly Lorenzo, and Jefferson Parish District Attorney's Office are dismissed from this case for lack of personal jurisdiction;

4.      Defendant Louisiana Department of Social Services is dismissed from this case based upon its sovereign immunity; and

5.      The plaintiff is to file a more definite statement of his claims against Pauline Smith within ten days of the date of this order.

Dated March 21, 2006.

                    BY THE COURT


                    s/ Warren K. Urbom
                    United States Senior District Judge